**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| FERMIN CORTEZ, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 8:08CV90 |
| | ) | |
| and | ) | |
| | ) | |
| DAVID CHUOL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 8:08CV99 |
| | ) | |
| vs. | ) | |
| | ) | |
| NEBRASKA BEEF, LTD. and | ) | **FINDINGS AND** |
| NEBRASKA BEEF, INC.,  | ) | **RECOMMENDATIONS** |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the defendants' Motion to Dismiss Pursuant to
Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Filing No. 125 in case number 8:08CV90; Filing No.
227 in case number 8:08CV99); and the plaintiffs' Motion for Class Certification Pursuant
to Fed. R. Civ. P. 23 (Filing No. 112 in case number 8:08CV90; Filing No. 214 in case
number 8:08CV99).[1]  The motions have been fully briefed.

## INTRODUCTION

The plaintiffs in the above-captioned consolidated cases are the defendants' current
and former employees.  The cases were filed as class actions alleging violations of the Fair
Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and state law regarding pay for pre-
and post-shift activities, or "donning and doffing," and other activities.  The plaintiffs seek
relief for alleged violations of state and federal wage-and-hour laws, including for alleged
failures to pay minimum wage and overtime compensation.  The two complaints were filed

---

[1]Unless a notation is made to the contrary, all subsequent filing numbers refer to filings contained in
case number 8:08CV90.

days apart, on March 3, 2008, and March 5, 2008, respectively.  **See** Filing No. 1[2] in case number 8:08CV90; Filing No. 1 in case number 8:08CV99.  On June 12, 2008, the cases were consolidated for all purposes.  **See** Filing No. 20.  On November 21, 2008, the court granted conditional certification for the plaintiffs to facilitate notice for the all potential FLSA parties.  **See** Filing No. 40.  The deadline for potential FLSA class members to opt-in was August 31, 2009.  **See** Filing No. 104 (expanding the opt-in deadline by an additional thirty days); **see also** Filing No. 97 (noting the plaintiffs initially had 120 days from the date of mailing the notice to opt-in, but expanding the deadline by fifty-two days).  On July 30, 2009, the court entered a progression order scheduling the case for trial, at the court's call, during the week of January 19, 2010.  **See** Filing No. 104.  At that time, the court also scheduled the motion for summary judgment and motion for class certification deadline for August 31, 2009.  **See** *id.*  On August 21, 2009, the plaintiffs filed the instant motion for class certification of their state law claims pursuant to Fed. R. Civ. P. 23.  **See** Filing No. 112.

The plaintiffs' complaint lists six causes of action:  (1) violation of FLSA, 29 U.S.C. § 207, for failure to pay the plaintiffs for all hours of work performed, including required overtime wages; (2) violation of FLSA, 29 U.S.C. § 206, for failure to pay minimum wages; (3) violation of Nebraska's Wage and Hour Act, Neb. Rev. Stat. § 48-1201 to 1209, for failure to pay minimum wages; (4) violation of the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 to 1232, for failure to pay class members for all work performed; (5) breach of contract under Nebraska common law for failure to pay the plaintiffs compensation in accordance with the parties' contractual agreement; and, alternatively (6) unjust enrichment under Nebraska common law to recoup the benefit of uncompensated labor from the defendants.  **See** Filing No. 81 - Amended Complaint.  The plaintiffs allege original jurisdiction for the plaintiffs' FLSA claims is based upon 28 U.S.C. §§ 1331 and 1337 and jurisdiction for the state law claims falls under the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  **See** *id.* ¶¶ 5-6.  The defendants

---

[2]On May 28, 2008, the plaintiffs filed an amended complaint.  **See** Filing No. 11.  A Consolidated Class and Collective Action Complaint was filed on June 3, 2009.  **See** Filing No. 81.

filed an answer to the amended complaint on July 28, 2009.  **See** Filing No. 102.  The defendants filed an amended answer on August 10, 2009.  **See** Filing No. 109.[3]

## FACTUAL BACKGROUND

The following facts are alleged in the plaintiffs' complaint.  The defendants operate a meat processing facility in Omaha, Nebraska.  **See** Filing No. 81 - Amended Complaint ¶ 8.  The plaintiffs allege they engage in "off the clock" work activities required, encouraged, suffered, and/or permitted by the defendants.  *Id.* ¶¶ 10-13.  More specifically, the plaintiffs allege they must report to their work areas to don certain personal protective equipment (PPE) for protection and sanitary reasons; walk to and wait in line for knives and other gear; prepare their gear; remove and re-don PPE for breaks; and clean and sanitize gear, among other activities, while off the clock.  *Id.*  The plaintiffs estimate they "spend as much as an hour of each day performing these required tasks without any compensation." *Id.* ¶ 4.  All of the plaintiffs' claims are based on these same general facts.

## ANALYSIS

### A.    Motion to Dismiss

The defendants filed the instant motion to dismiss on August 25, 2009.  **See** Filing No. 125.  The defendants filed a brief (Filing No. 126), reply brief (Filing No. 147), and an index of evidence (Filing No. 127) in support of their motion.  Specifically, the defendants seek dismissal of the plaintiffs' Third, Fourth, Fifth and Sixth Causes of Action based on federal implied conflict preemption based on FLSA, 29 U.S.C. § 216(b); the "inherent incompatibility" between Rule 23 and the FLSA, 29 U.S.C. § 216(b); and lack of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(2) and (c)(4).  *Id.*  The plaintiffs filed a response brief arguing the defendants' motion to dismiss is untimely and substantively baseless.  **See** Filing No. 136.

---

[3]The record fails to reflect the defendants' authority for filing the amended answer as no leave of court was given or written stipulation filed.  **See** Fed. R. Civ. P. 15(a) (noting an amendment may only be filed as a matter of course before the case is scheduled for trial).

When reviewing a motion to dismiss based on the failure to state a claim, the court assumes all factual allegations in the complaint are true. *Grand River Enters. Six Nations, Ltd. v. Beebe*, 574 F.3d 929, 935 (8th Cir. 2009). However, "the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." *Id.*; see *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (noting allegations must "raise a right to relief above the speculative level"). "The motion should be granted if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Grand River*, 574 F.3d at 935. Similarly, "[j]udgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (noting the same standard is used for motions filed pursuant to Rule 12(b)(6) and for motions filed pursuant to Rule 12(c) after the close of the pleadings).

### 1.      Timeliness

The plaintiffs argue the defendants missed the deadline to file a motion to dismiss, based on failure to state a claim, by two years. **See** Filing No. 136 - Brief p. 6. Similarly, the plaintiffs contend, if the court were to construe the defendants' motion as a motion for judgment on the pleadings, the motion is outside the deadline for dispositive motions. *Id.* The plaintiffs assert the defendants can give no legitimate explanation or excuse for filing the motion to dismiss so late in the proceedings because the motion does not rely on the facts of the case. *Id.* The defendants deny they missed a dispositive motions deadline, because none had been expressly set in this case. **See** Filing No. 147 - Reply p. 1. Further, the defendants contend they preserved their defenses in the amended answer filed August 10, 2009. *Id.*; **see also** Filing No. 109.

The defendants' motion to dismiss explicitly relies on both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). **See** Filing No. 125. Rule 12 provides "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). However, the defense of failure to state a claim upon which relief can be granted may be raised in a motion after the pleadings have closed and as late as at trial. **See** Fed.

4

R. Civ. P. 12(h)(2).   Additionally, the court may dismiss the action at any time if it determines the court lacks subject-matter jurisdiction.  **See** Fed. R. Civ. P. 12(h)(3).  With the plain language of these rules as guidance, the court finds the defendants' motion is timely and should be considered by the court on the merits.

### 2.   Preemption

The defendants argue the plaintiffs' claims for overtime and minimum wage payments under state law are preempted by the FLSA because the state law actually conflicts with the federal law.  **See** Filing No. 126 - Brief p. 2, 4-5.  Specifically, the defendants assert the state statutes do not create a substantive right, such right is created under the FLSA.  *Id.*  These state law rights are equal to, rather than greater than, the FLSA provisions.  *Id.* at 6.  Moreover, the defendants contend the FLSA is the exclusive remedy for FLSA created rights, particularly where the state law claims arise out of the same facts and circumstances as the federal claims, thus the plaintiffs are impermissibly attempting to enforce the FLSA by using Rule 23 to create an opt-out class.  *Id.* at 4-5, 7. According to the defendants, allowing an opt-out class on parallel state law wage and hour claims would frustrate the FLSA's § 216(b) goal of "limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions."  *Id.* at 6-7 (**quoting** *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989)).

In contrast, the plaintiffs argue there is no conflict between the terms of the FLSA and Nebraska law.  **See** Filing No. 136 - Brief p. 10.  Furthermore, the plaintiffs contend their state law claims do not "stand as an obstacle" to implementation of the federal law, particularly where the FLSA contains a savings clause, which explicitly allows states to provide for more beneficial minimum wages and maximum work week hours.  *Id.* at 11-12. Under these circumstances, the plaintiffs assert only state laws providing less beneficial minimum wages and maximum work week hours are preempted.  *Id.* at 18.

The parties each cite cases that support their respective positions, indicating the area of law is unsettled.  In fact, only two circuit courts of appeal have reviewed the issue, with divergent results.  **See** *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 192-95 (4th Cir.

2007) (holding FLSA enforcement scheme preempted contract, negligence, and fraud claims); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1152-54 (9th Cir. 2000) (holding FLSA did not preempt state law fraud claim). The Eighth Circuit Court of Appeals has not yet decided the issue, however several district courts in this circuit have.

Congress has the authority to expressly preempt state law by defining the scope of preemption, or to impliedly preempt state law where congressional intent to supersede state law may be inferred. **See** U.S. Const. art. VI, cl. 2; *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982). Congressional intent controls the preemption analysis, however the court presumes Congress does not wish to interfere with the state's power to provide for the welfare of its people "unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 129 S. Ct. 1187, 1194-95 (2009). "Implied preemption exists where a federal statutory or regulatory scheme is so pervasive in scope that it occupies the field, leaving no room for state action-this is termed field preemption." *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 780 (8th Cir. 2009). Another form of implied preemption, known as conflict preemption, occurs where state law is superseded to the extent that it conflicts with federal law. *Id.* "Conflict preemption exists where a party's compliance with both federal and state law would be impossible or where state law would pose an obstacle to the accomplishment of congressional objectives." *Id.*; **see** *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98-99 (1992) ("Our ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole."); *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984) (defining conflict as "an obstacle to the accomplishment of the full purposes and objectives of Congress"). State law is an obstacle "if it interferes with the methods by which the federal statute was designed to reach [its] goal." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987); **see** *Forest Park II v. Hadley*, 336 F.3d 724, 733 (8th Cir. 2003).

In the area of labor law, "[t]here is a strong presumption that Congress, in enacting the FLSA for the benefit of workers, did not intend to override the States' traditional role in protecting the health and safety of their citizens." *Anderson*, 508 F.3d at 193. "[T]he FLSA does not generally preempt state law claims in a given case." *Bouaphakeo v.*

6

*Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 886 (N.D. Iowa 2008). Tellingly, the FLSA contains a savings clause, which provides: "No provision of this chapter . . . shall excuse noncompliance with any Federal or State law . . . establishing a minimum wage higher than the minimum wage . . . or a maximum work week lower than the maximum workweek [sic] established under this chapter . . . ." 29 U.S.C. § 218(a). Accordingly, the savings clause expressly allows states to legislate greater protections for the benefit of workers. **See *Anderson*, 508 F.3d at 193.** The parties' interpretations of this savings clause guides their arguments about preemption.

The defendants contend any state law providing worker benefits equal to or less than the FLSA benefits is preempted. The defendants assert that since Nebraska law provides no greater benefits than the FLSA, the plaintiffs' claims based on Nebraska law are preempted. **See *Anderson*, 508 F.3d at 193** (deeming state claims to be preempted by the FLSA where those claims have merely duplicated FLSA claims). In contrast, the plaintiffs contend preemption occurs only when the state law benefits are less than the FLSA benefits. **See *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F. Supp. 2d 1026, 1031 (E.D. Wis. 2008)**. The parties do not dispute the plaintiffs' state law claims for minimum wage and overtime violations correspond to FLSA causes of action consisting of the same claims. **See** Filing No. 147 - Reply p. 1; Filing No. 136 - Brief p. 21.

Based on the express statement of congressional intent "not to displace state laws granting workers higher minimum wages or a shorter maximum workweek, it is clear that the FLSA would preempt only state laws that mandated lower minimum wages or longer maximum workweeks." *DeKeyser*, 589 F. Supp. 2d at 1031. Since, as the parties agree, the Nebraska wage and hour laws are not less generous than those of the FLSA, "it seems clear that the FLSA does not displace the state law. Rather, it would seem that state law may offer an alternative legal basis for equal or more generous relief for the same alleged wrongs." *Id.*; **see *Bouaphakeo*, 564 F. Supp. 2d at 884** (holding "the FLSA does not provide the exclusive remedy for violations of its mandates"). In any event, the case at bar is nearly factually identical to the **DeKeyser** case where the plaintiffs alleged the defendants actions violate both state and federal laws. These cases are distinguishable from **Anderson**, where no state law wage violations were alleged. Rather, the plaintiffs

7

in ***Anderson*** asserted state claims based on contract, negligence, and fraud as sources of remedies for alleged FLSA violations.  **See** *Anderson*, 508 F.3d at 193 & n.11 (noting "the contract claim [arose] from an affirmative promise to pay all wages due under the FLSA").  In any event, the possibility that two separate, but related, claims have differing procedures fails to meet the threshold required to stand as an obstacle to implementation of the federal-statute based claim.  **See** *Bouaphakeo*, 564 F. Supp. 2d at 885 (noting state law enforcement "itself does not interfere with the methods by which the FLSA is implemented").  Accordingly, the FLSA does not preempt Nebraska wage and hour laws as pleaded in this case.

### 3.    Inherent Incompatibility

The defendants contend the inherent conflict between the opt-in procedure of § 216(b) and the opt-out procedure of Fed. R. Civ. P. 23 is sufficient legal justification for dismissing the plaintiffs' state law claims.  **See** Filing No. 126 - Brief p. 8.  The defendants note, however, the cases supporting their position rely on other grounds, such as a finding of preemption or declining to exercise supplemental jurisdiction, for dismissing state law claims.  The plaintiffs deny inherent compatibility provides legal justification for summarily dismissing the state law claims.

"There is no legal doctrine, of which the [c]ourt is aware, that permits the [c]ourt to dismiss a cause of action solely on the grounds that it is 'inherently incompatible' with another action before it."  *Salazar v. Agriprocessors, Inc.*, 527 F. Supp. 2d 873, 879 (N.D. Iowa 2007) (alternations in original) (**quoting** *Westerfield v. Wash. Mut. Bank*, No. 06CV2817, 2007 WL 2162989, at *2 (E.D.N.Y. July 26, 2007) (unpublished)); **see also** *Gardner v. W. Beef Props., Inc.*, No. 07CV2345, 2008 WL 2446681, at *2 (E.D.N.Y. June 17, 2008); *Hendricks v. JPMorgan Chase Bank, N.A.*, No. 3:08CV613, 2008 WL 5191819, *2-3 (D. Conn. Nov. 21, 2008).  **Compare** *Ellis v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439, 448 (W.D. Pa. 2007) (noting incompatibility between opt-in and opt-out procedures when dismissing duplicative state law claims after conflict preemption analysis).  Based on the case law in this circuit and others, the court declines to dismiss

the plaintiffs' state law claims based on incompatibility alone.  Instead, the court will address the substantive arguments related to preemption and supplemental jurisdiction.

### 4.    Supplemental Jurisdiction

The plaintiffs allege original jurisdiction for the plaintiffs' FLSA claims is based upon 28 U.S.C. §§ 1331 and 1337 and the federal court has jurisdiction over the state law claims under the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  **See** Filing No. 81 - Amended Complaint ¶¶ 5-6.  Specifically,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

The defendants do not deny supplemental jurisdiction is authorized pursuant to 28 U.S.C. § 1367(a) since the claims are related and form part of the same case or controversy and arise from a common nucleus of operative fact.  **See** Filing No. 126 - Brief p. 3; **see also** ***OnePoint Solutions, LLC v. Borchert***, 486 F.3d 342, 350 (8th Cir. 2007) (jurisdictional standards).  Rather, the defendants argue the court should decline to exercise supplemental jurisdiction.  **See** Filing No. 126 - Brief p. 10.

Under the supplemental jurisdiction statute:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
> (1)    the claim raises a novel or complex issue of State law,
> (2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3)    the district court has dismissed all claims over which it has original jurisdiction, or
> (4)    in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Accordingly, "even if the court has the power in a constitutional sense to hear the entire case, it need not do so, for 'pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.'" *Koke v. Stifel, Nicolaus & Co., Inc.*, 620 F.2d 1340, 1346 (8th Cir. 1980) (**quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)**).  The court's discretion "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *Gibbs*, 383 U.S. at 726; **see** *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009).

Based on the supplemental jurisdiction statute, the defendants seek dismissal based on jurisdiction for two reasons.  **See** Filing No. 126 - Brief p. 10.  First, the defendants contend the state law claims will substantially predominate over the federal claims because of the number of potential plaintiffs and the difference between the elements of proof in the state and federal claims.  *Id.* at 16-18.  Second, the defendants assert the incompatibility between the opt-in and opt-out procedures provides an "other compelling reason" to decline jurisdiction.  *Id.* at 16, 18-20.

### a.   Predominance

"[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726-27; **see** *Ahle v. Veracity Research Co.*, 641 F. Supp. 2d 857, 864 (D. Minn. 2009).  "Predomination under section 1367 generally goes to the type of claim, not the number of parties involved.  But the disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree." *De Asencio*, 342 F.3d at 311 (noting a disparity between two prospective classes of 447 opt-in and 4,100 opt-out plaintiffs was one factor leading appellate court to reverse district court's grant of supplemental jurisdiction).  After review of the specifics of a case, "a district court will find substantial predomination where 'a state claim constitutes the real body of a case, to which the federal claim is only an appendage.'"

*De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) (**quoting** *Gibbs*, 383 U.S. at 727).  In such a case, the state claim may fairly be dismissed.

In this case, the defendants contend the sheer difference in sizes for the two classes will profoundly affect the substantive rights of the parties and create predominate state law claims.  **See** Filing No. 126 - Brief p. 16-17.  In this case, the current FLSA class contains 550 opt-in members.  **See** Filing No. 127 - Ex. 1 Costanza Aff. ¶ 4.  By contrast, the potential class for the state law claims is approximately 3,490 members.  *Id.* ¶ 5.  The defendants assert the difference in class sizes will affect the dynamics of many parts of litigation including discovery, trial, negotiations, and settlement.  **See** Filing No. 126 - Brief p. 17.  This change in dynamics, according to the defendants, will enable the state claims to predominate over the FLSA claim based on the sheer number of plaintiffs involved in the state claims.  *Id.*  Additionally, the defendants argue the state law claims require elements of proof not present in the FLSA claim.  **See** Filing No. 126 - Brief p. 16-17.  Specifically, the defendants contend the differences between the claims will require individualized discovery from the state law class members with regard to the existence of an oral contract.  *Id.* at 17.  Furthermore, the defendants assert oral contract claims are not appropriate for class treatment.  *Id.*

The plaintiffs deny the difference in class sizes or discovery matters should weigh in favor of dismissal.  **See** Filing No. 136 - Brief p. 20-21.  Rather, the plaintiffs contend what governs is the actual nature of the claims, that is whether "the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims."  *Id.* at 21 (**quoting** *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab.*, 613 F. Supp. 2d 437, 442-43 (S.D.N.Y. 2009)).  The plaintiffs argue the nature of the state and federal claims are the same, relying on the same types of facts and discovery requirements.  *Id.* at 21.

The court finds the relevant consideration for the defendants' motion to dismiss is the type of claims involved, rather than the potential difference in size of the two classes.  **See** *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 425 (D.C. Cir. 2006).  At this time, the court is able to evaluate the types of claims made and finds the state claims to "essentially replicate the FLSA claims" accordingly, the state claims "plainly do not

predominate." **See _id._**   Specifically, the state and federal claims involve the same pay policy or practice used by the defendants for class members in each of the classes.   Under these circumstances, the state claims cannot be found to be novel and complex in comparison to the FLSA claims.   Furthermore, the size of the state law claims' class is currently known.   Although, it is likely to be larger than the FLSA class, the court will not speculate as to whether any possible disparity will affect the substantive rights of the defendants as to create predominate state law claims.   **See, e.g.,** _Salazar_, 527 F. Supp. 2d at 884.   Finally, the court finds the potential disparity in the size of the two class is an insufficient ground, by itself, to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(2).

### b.   Other Compelling Reasons

Aside from the issue of predominance, a "court may consider whether 'exceptional circumstances' exist and whether 'there are other compelling reasons for declining jurisdiction' under section 1367(c)(4)."   _Lindsay_, 448 F.3d at 425 (**quoting** 28 U.S.C. § 1367(c)(4)).   Such determination "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims."   _Gibbs_, 383 U.S. at 726.

The defendants argue subversion of congressional intent is a compelling reason to decline supplement jurisdiction.   **See** Filing No. 126 - Brief p. 18.   The defendants contend allowing an opt-out class to proceed on claims mirroring the FLSA opt-in class claims would undermine congressional intent.   **_Id._**[4]   The defendants rely on _Woodard v. FedEx Freight East, Inc._, 250 F.R.D. 178 (M.D. Pa. 2008).   The **_Woodward_** court noted, "Rule 23 is the antithesis of § 216(b)."   _Woodard_, 250 F.R.D. at 187 ("These irreconcilable schemes have divergent consequences, such as the size of the respective classes and the binding effect of judgments.").   Based on the divergent consequences of the two types of class actions, "simultaneous prosecution effectively nullifies the [opt-in procedure] of

---

[4] The **_De Asencio_** court did not evaluate the argument under 28 U.S.C. § 1367(c)(4), but did address the issue under subsection (c)(2), finding "Congress's interest in these matters is manifest."  **See** _De Asencio_, 342 F.3d at 309 n.12, 310-11.

§ 216(b)." *Id.* Under these circumstances, the *Woodard* court held, "a compelling reason exists to decline supplemental jurisdiction." *Id.*

However, the only circuit court to address the issue stated, "[w]e do not view the difference between the opt-out procedure for state law claims provided by Rule 23 as fitting the 'exceptional circumstances/other compelling reasons' language of section 1367(c)(4)." *Lindsay*, 448 F.3d at 425 (circumscribing the district court's review of authority to decline supplemental jurisdiction on remand). The *Lindsay* court determined, "[w]hile there is unquestionably a difference-indeed, an opposite requirement-between opt-in and opt-out procedures, we doubt that a mere *procedural* difference can curtail section 1367's *jurisdictional* sweep." *Id.* at 424 (referring specifically to section 1367(a)). Further, Congress has made no explicit or inferential attempt requiring courts to refuse to exercise supplemental jurisdiction. See *Salazar*, 527 F. Supp. 2d at 884-85. In fact, "[t]he issue of congressional intent with respect to the FLSA is not an issue of judicial economy, convenience, fairness to the parties, or federal-state comity. As a result, it may not serve as a 'compelling reason' for declining supplemental jurisdiction." *Id.* at 885 (**quoting** ***Bamonte v. City of Mesa***, No. CV 06-1860, 2007 WL 2022011, at \*4 (D. Ariz. July 10, 2007)); **see also** ***Guzman v. VLM, Inc.***, No. 07-CV-1126, 2008 WL 597186, at \*9-\*10 (E.D.N.Y. Mar. 2, 2008).

The court finds convincing the rationale contained in *Lindsay* and *Salazar*. In sum, the values of judicial economy, convenience and fairness all favor exercising supplemental jurisdiction, and comity concerns are not strongly implicated. The factual overlap between the federal claims and the state claims is virtually total. It would illserve the interests of convenience or judicial economy to re-litigate in state court the defendants' pay practices.

## B.    Motion for Class Certification

The plaintiffs filed a brief (Filing No. 113), an index of evidence (Filing No. 114); and four separately filed declarations (Filing Nos. 115-118) in support of their motion for class certification. The defendants filed a brief (Filing No. 132) and an index of evidence (Filing No. 133) in opposition to class certification. The plaintiffs filed a brief (Filing No. 145) in reply.

13

Rule 23 of the Federal Rules of Civil Procedure governs the requirements for establishing and maintaining certification for a class action lawsuit. "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994) (**citing** *Smith v. Merch. & Farmers Bank of W. Helena*, 574 F.2d 982, 983 (8th Cir. 1978)).

Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)    the representative parties will fairly and adequately protect the interests of the class.

**See** Fed. R. Civ. P. 23(a).  The United States Supreme Court has summarized the four basic requirements as these: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The determination under Rule 23(a) is not perfunctory, "the court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied." *Elizabeth v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (**quoting** *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)).  "While class stipulations by the parties may be helpful, they are not complete substitutes for 'rigorous analysis.'" *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986).

"Plaintiffs must meet all requirements of Rule 23(a) and fall within one of the categories of Rule 23(b) to certify their . . . claims as a class action." *Blades v. Monsanto Co.*, 400 F.3d 562, 568-69 (8th Cir. 2005) (**citing** *Amchem*, 521 U.S. at 614).  Rule 23(b) allows a class action if (1) there is otherwise a risk of (a) inconsistent adjudications or (b) impairment of interests for non class members; (2) the defendant's conduct applies generally to the whole class; or (3) questions of law or fact common to members of the class predominate and the class action is a superior method for adjudication.  **See** Fed. R. Civ. P. 23(b).

14

In addition to the Rule 23(a) and (b) requirements, pursuant to Rule 23(c)(1)(B): "An order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)."  The plaintiffs' propose a class action, pursuant to Fed. R. Civ. P. 23, defined consistently with the FLSA collective action previously conditionally certified in this case. **See** Filing No. 112 - Motion; Filing No. 40 - Order.  The proposed class consists of

> All current and former non-exempt, hourly production and support employees who have been employed at any time by Nebraska Beef, Ltd. and/or Nebraska Beef, Inc. at the Omaha, Nebraska processing facility during the time period March 4, 2004 to the present, and who use personal protective equipment.

**See** Filing No. 112 - Motion p. 1.

The plaintiffs contend the putative class members are all subject to the defendants' common policy of requiring employees to perform work without compensation.  **See** Filing No. 113 - Brief p. 1-2.  Specifically, the subject employees are required to engage in, at least some of, the following uncompensated activity:  don their PPE, walk to various parts of the plant to obtain their PPE, wait in lines to obtain their PPE, sharpen their knives, sanitize their PPE, walk to various parts of the plant to return their PPE, and doff their PPE.  The plaintiffs describe the pay system as a "gang time" system whereby the employees are paid for the period of time the production line is moving, rather than the actual time the employee is performing work.  *Id.* at 2, 3-5.  The plaintiffs argue that although the defendants dispute whether the practice is a violation of Nebraska law, the system is uniform among production workers at the facility.  Further, all employees are subject to the same orientation program, thus are subject to the same promises regarding how pay will be recorded or paid.  *Id.* at 2.  The plaintiffs also contend that although the damages may be different between plaintiffs or difficult to calculate, such issue is not dispositive of the certification decision.

The defendants deny class certification is appropriate in this case.  The defendants argue that although all of the putative class members may wear PPE, the type of PPE worn and whether or not such donning or doffing activity is compensable presents individual questions among class members.  **See** Filing No. 132 - Brief at 2.  The defendants contend

time spent donning or doffing non-unique gear in not compensable under the law. Alternatively, the defendants state evidence shows some employees are compensated for the time spent donning and doffing PPE. **See *id.*** at 3. Specifically, the defendants provide evidence the "gang time" begins at least five minutes before any member of the line is required to be present on the line. *Id.* Further, not all members of the line must be present at any one time because the employees need only be in position when the product is passing their stations. *Id.* This system allows additional compensated time, for example, for the person at the end of the line to don PPE and prepare for the shift prior to engaging in production line activity. *Id.* Additionally, the defendants argue the ability to calculate hours worked reaches, not only the damages issues, but also whether the defendants are subject to liability based on the nature of the claims. *Id.* at 12. Specifically, how much an employee earns and how long that employee takes to engage in previously uncompensated work will determine whether the defendants are liable on a minimum wage or overtime compensation violation. *Id.*

The court will review, *seriatim*, each of the requirements the plaintiffs must satisfy with regard to class certification.

### 1. Rule 23(a) Requirements

### i. Numerosity

The first prerequisite the plaintiffs must meet under Rule 23(a) is numerosity. *Amchem*, 521 U.S. at 613. Rule 23(a) requires "the class be so numerous that joinder of all members is impracticable." **See** Fed. R. Civ. P. 23(a)(1). Rule 23(a) "requires only the impracticality, not the impossibility, of joinder." *United States Fid. & Guar. Co. v. Lord, 585 F.2d 860, 870 (8th Cir. 1978).* The plaintiffs need only show "that joining all members of the class would be difficult." *Caroline C. By and Through Carter v. Johnson, 174 F.R.D. 452, 462 (D. Neb. 1996)* (citations omitted) (stating "as few as 40 class members should raise a presumption that joinder is impracticable"). "The Eighth Circuit has not established strict requirements regarding the size of a proposed class[.]" *Estate of Mahoney v. R.J. Reynolds Tobacco Co., 204 F.R.D. 150, 153 (S.D. Iowa 2001)* (**citing**

16

*Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987); *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir. 1977)).

"Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class. . . . [Further,] where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). Typically, the court may rely on the pleadings, however "it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met." *Chesher v. Neyer*, 215 F.R.D. 544, 546 (S.D. Ohio 2003) (citing *Gen. Tel. Co. of S.W.*, 457 U.S. at 160). A court "may consider reasonable inferences drawn from facts before [it] at the stage of the proceedings." *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976); **see** *Serfaty v. Int'l Automated Sys., Inc.*, 180 F.R.D. 418, 420 (D. Utah 1998).

In the instant case, there are potentially 3,490 class members at the Omaha, Nebraska processing facility. **See** Filing No. 127 - Ex. 1 Costanza Aff. ¶ 4. Each of these employees is a potential class member, particularly because the defendants admit they use the same pay system for the workers defined by the class definition. The defendant does not dispute numerosity. **See** Filing No. 132 - Brief p. 4.

After consideration of the number of persons in the proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and other factors relevant to the practicality of joining all the putative class members, the court finds the plaintiffs satisfy the numerosity requirement. **See** *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982). Based upon the evidence presented, the large number of putative class members, over 3,000, justifies class treatment. It is evident a class of this size would promote judicial economy over individual suits, particularly under the circumstances of this case.

### ii.   Commonality

Second, the plaintiffs must prove the element of commonality. *Amchem*, 521 U.S. at 613. Rule 23(a)(2) requires there be "questions of law or fact common to the class."

See Fed. R. Civ. P. 23(a)(2).  "Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'"  *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (**quoting** *Paxton*, 688 F.2d at 561).  However, "[t]he rule does not require that every question of law or fact be common to every member of the class."  *Paxton*, 688 F.2d at 561.  Further, commonality may be shown "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated."  *Id.* (citation omitted).  One district court has stated "the commonality requirement imposes a very light burden on the Plaintiff seeking to certify a class and is easily satisfied."  *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999).

The plaintiffs argue there are common questions of law and fact because the case is based on whether the defendants failed to pay hourly employees for all work prior and subsequent to their shift.  **See** Filing No. 113 - Brief p. 1-2.  In contrast, the defendants argue there is wide factual variations among the employees due to their particular activities including types of PPE worn, equipment used and place on the production line.  **See** Filing No. 132 - Brief p. 3, 5.  The court concludes the core of the plaintiffs' suit is based on the same law and common facts.  Here, the defendants rely on a uniform labor practice for its production employees.  The practice results in the employees engaging in activities for which they are not paid.  While the exact amount of time for each employee may vary, the employees are performing nearly identical tasks under nearly identical conditions.  Variation among employees due to the types of clothing worn, equipment used and place on the production line does not diminish the nature of the general pay system.  Based upon the evidence presented and the parties' pleadings, the undersigned magistrate judge finds the commonality requirement has been satisfied as to the class as a whole.

### iii.    Typicality

Third, the class representatives have the burden to show typicality of their claims in relation to the other putative members of the class.  *Amchem*, 521 U.S. at 613.  Rule 23(a) requires a named plaintiff to have claims or defenses which "are typical of the claims or defenses of the class."  **See** Fed. R. Civ. P. 23(a)(3).  The Eighth Circuit, "long ago

defined typicality as requiring a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990) (internal quotations and citations omitted). "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citations omitted and alteration in original); **see** *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). The burden to establish typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. However, the plaintiffs cannot show typicality where the question of liability can only be ascertained on an individualized inquiry for each class member. *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1004-05 (8th Cir. 2004) (denying class certification for denial of disability insurance benefits).

The plaintiffs contend the claims of the named plaintiffs are typical of the whole class and the named plaintiffs' allegations are not based on conduct unique to them but rather on a pay system which affects all class members. **See** Filing No. 113 - Brief p. 25-27. The defendants deny the plaintiffs can show typicality because proof of a violation of state law will require individualized inquiry. **See** Filing No. 132 - Brief p. 5-7. Specifically, the defendants argue the court must determine whether each employee actually engaged in uncompensated work by evaluating the precise time it takes an employee to don or doff specific PPE and walk to a particular locker room, and when during the gang time period the employee is required to be at a work station based on its location (beginning or end) in the production line (i.e., how much non-production activity time for which the employee is already receiving compensation). *Id.* at 6. For these reasons, the defendants contend "whether the *total* of time spent on compensable work exceeds compensated time is not susceptible to common proof." *Id.* at 7.

It is true "[a] proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation ." *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir.1999) (citing cases). By the same token, it is inappropriate to certify a class "where a putative class representative is subject to unique

defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  However, "differences in the claimed damages or the availability of certain defenses do not defeat typicality, as long as the class claims are generally based on the same legal or remedial theory." *Morris v. Wachovia Sec. Inc.*, 223 F.R.D. 284, 295 (E.D. Va. 2004).

As a possible unique defense, the defendants argue each employee will have to show whether he or she engaged in compensable work.  After reviewing this argument in light of all the evidence presented, the court rejects the defendants' argument because employees do not present unique arguments with regard to the types of activities that are allegedly unfairly uncompensated.  Whether the employees are engaging in compensable pre- and post-shift activities will not depend on how much time an individual employee takes to don an apron.  Instead the plaintiffs all rely on non-unique general allegations that particular categories of activities are compensable, yet the defendants fail to compensate for these activities.  At a basic level, the claims and arguments made by the named plaintiffs are typical of the proposed class members.  The plaintiffs do not rely on the time taken to perform the uncompensated activities by a single employee, but generally allege the average time is approximately an hour of uncompensated time per shift.  The critical payment system, i.e,., which activities are compensated, is not unique to a particular plaintiff or to the named plaintiffs.  Most of the defendants' employees are paid based on a system which excludes payment for certain activities.  Accordingly, the plaintiffs have met their burden of showing their claims are typical of those of the putative class.

### iv.    Adequacy of Representation

The fourth prerequisite a plaintiff must meet under Rule 23(a) for class certification is adequacy of representation. *Amchem*, 521 U.S. at 613.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  **See** Fed. R. Civ. P. 23(a)(4).   "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified

counsel." *Paxton*, 688 F.2d at 562 (**citing** *Gonzales v. Cassidy*, 474 F.2d 67, 72 (6th Cir. 1973)).

The plaintiffs argue they and their counsel will adequately protect the interests of all proposed class members because the named plaintiffs have the same interests as all putative class members in recovering wages.  **See** Filing No. 113 - Brief p. 27.  The defendants do not dispute the adequacy of counsel.  **See** Filing No. 132 - Brief p. 7.  However, the defendants argue the class representatives have failed to prove they have common interests with other members of the class because their interests are unstated. *Id.*  The plaintiffs counter that their interests have been stated in affidavits, which are contained in the record, and through their actions to date.  **See** Filing No. 145 - Reply p. 12-13.  Further, the plaintiffs argue the defendants have failed to show any deficiency or indication the named plaintiffs interests are antagonistic to the putative class members. Id. at 13.

The court has reviewed the evidence presented and finds the plaintiffs have common interests with the proposed members of the class under the definition of the claim used by the plaintiffs and sufficient interest in prosecuting the matter on behalf of the class. In fact, as the plaintiffs have defined their claims, the named plaintiffs have interests identical to the interests of the class.  The plaintiffs' counsel also appears qualified.  Thus, the undersigned magistrate judge finds the plaintiffs and their counsel will fairly and adequately protect the interests of the class, thus meeting the adequacy of representation element under Rule 23(a)(4).

### 2.      Rule 23(b)(1) Requirements

For class certification, the plaintiffs must also prove this action may be maintained under Rule 23(b)(1), (2), or (3).  *Amchem*, 521 U.S. at 614.  The plaintiffs have moved to do so under Rule 23(b)(1) and/or Rule 23(b)(3).  Under Rule 23(b)(1), the court must find:

> prosecuting separate actions by or against individual class members would create a risk of:
> (A)      inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

**See** Fed. R. Civ. P. 23(b)(1).

The plaintiffs argue the defendants' pay system impacts each class member similarly and raises the same questions of law.  **See** Filing No. 113 - Brief p. 28.  The plaintiffs also contend it is unlikely the defendants' employees would pursue their claims individually due to the resources required to litigate and modest size of claims.  *Id.*  There is a risk that if each of the production employees were to litigate separately varying outcomes would result with regard to, for example, the types of activities which are compensable.  *Id.*  The defendants argue the individualized nature of the damage awards does not amount to an "incompatible standard of conduct" for the defendants.  **See** Filing No. 132 - Brief p. 8-9.

The court finds the defendant's uniform pay system affects each employee in the same way, albeit to varying degrees.  Further, a determination about whether the pay system is a violation of state statute should be uniform for each plaintiff and the defendants.  **See** *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 396-97 (E.D. Pa. 2001) ("Certifications under [Rule 23(b)(1)] are common in labor relations cases because defendants often provide 'unitary treatment to all members of [a] putative class [in this] . . . area' and thus the rights of absent 'class member[s] [are often] . . . implicated by litigation brought by other class members.'") (alterations in original).  The defendants may be subject to differing and incompatible standards of conduct if the outcomes of separate litigation resulted in different definitions of work or compensable activity.  Under such circumstances, employees working side-by-side may have to be compensated differently for the same activity.  Accordingly, class certification under Rule 23(b)(1) appears appropriate.

### 3.      Rule 23(b)(3) Requirements

Under Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  **See** Fed. R. Civ. P. 23(b)(3).  "The requirements of 'predominance' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision."  ***Bryant v. Bonded Accounts Serv./Check Recovery***, 208 F.R.D. 251, 261 (D. Minn. 2000).

### 1.      Predominance

As to the first prong of the inquiry, the Supreme Court has ruled the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." ***Amchem***, 521 U.S. at 623 (**citing** 7A Wright, et al., **Fed. Practice & Proc.** § 1777, at 518-19 (2d ed. 1986)).  "In order to 'predominate,' common issues must constitute a significant part of the individual cases." ***Jenkins v. Raymark Indus., Inc.***, 782 F.2d 468, 472 (5th Cir. 1986).  "Where there is an essential factual link between all class members and the defendants, for which the law provides a remedy, questions of law or fact common to the class exist." ***D'Alauro v. GC Servs. Ltd. P'Ship***, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (citation omitted).  Furthermore, "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." 7A Wright, et al., ***supra***, § 1778.

> The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual.  If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

***Blades v. Monsanto Co.***, 400 F.3d 562, 566 (8th Cir. 2005) (internal citation omitted).

The defendants argue individual issues predominate in this case because the plaintiffs rely on the existence of oral contracts and liability must be based on individual compensation experiences.  **See** Filing No. 132 - Brief p. 10-15.  However, the court finds the employees do not present unique arguments with regard to oral contracts.  The record shows the employees rely instead on non-unique employee training sessions and other non-unique representations for the basis of the oral contracts at issue.  Additionally, the types of activities subject to compensation are uniform among the employees without regard to their individual work experiences.  Accordingly, whether the employees are engaging in compensable pre- and post-shift activities will not depend on individual contract analysis or timing.  In this case, common issues are the same in all class members' cases and therefore the same issue "predominates" over their individual cases.  Each case for each class member is about the defendants' common pay system for activities by production employees at the Omaha, Nebraska facility.  Because this same issue is common to all class members, regardless of the differences in individual experiences, the predominance element is satisfied.

### ii.    Superiority

For the second prong of the Rule 23(b)(3) inquiry, the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy."  **See** Fed. R. Civ. P. 23(b)(3).  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy.  Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy. . . . [It] will create judicial dis economy." *Estate of Mahoney*, 204 F.R.D. at 161 (**quoting** *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 94 (W.D. Mo. 1997) (emphasis in original)).

The plaintiffs contend there is no alternative forum superior to a class action under the facts of this case.  A class action would give thousands of workers an opportunity to resolve their claims in one lawsuit, as opposed to the same number of individual lawsuits over the same issue.  **See** Filing No. 113 - Brief p. 30-32.  The defendants contend a class

action under the circumstances is not superior for three reasons:  (1) the FLSA represents the superior method for adjudicating these claims; (2) class treatment of the plaintiffs' claims for unpaid wages would thwart Congressional intent; and (3) considerations of preemption and supplemental jurisdiction weigh heavily against class certification."  **See** Filing No. 132 - Brief p. 15-19.  The defendants' second and third arguments were addressed above.  Accordingly, the court will focus on the defendants' first argument here.

The defendants argue only those plaintiffs who "believe they were actually aggrieved by the defendants have now opted-in to the FLSA action."  ***Id.*** at 17.  For this reason, the defendants contend the court already knows which potential class members "*want* to join this action."  ***Id.***  The defendants rely on an unpublished opinion reasoning an FLSA class was superior to, and obviated the need for, a Rule 23 class based on parallel state law claims:

> Because all of the companies' present and former employees will have the chance to decide whether to join the case, and because those who wish to do so will be before the Court, it makes no real sense to the Court to certify a class that will *automatically* include all of the employees unless they opt out.

***Muecke v. A-Reliable Auto Parts & Wreckers, Inc.***, No. 01 C 2361, 2002 WL 1359411, at *7 (N.D. Ill. June 21, 2002).

However, the court finds the reasoning in cases rejecting the arguments raised by the defendants to be more persuasive.  **See** ***Damassia v. Duane Reade, Inc.***, 250 F.R.D. 152, 161-64 (S.D.N.Y. 2008).  This is particularly true where, as here, the court determines the FLSA claims do not pre-empt the state law claims and exercises supplemental jurisdiction.  Although the defendants' employees have received notice of the FLSA action, there may be a number of reasons the employees failed to opt-in to the action that had nothing to do with a belief they were not actually aggrieved.  **See** *id.* at 163 (noting "employees may feel intimidated about volunteering to participate in an opt-in collective action").  The ***Damassia*** court also noted:

> Precisely quantifying these costs-to those wrongly included in class actions, or to those wrongly excluded from collective actions-is not possible, but there is no reason to think that the one will significantly outweigh the other.  Indeed, it may be that in the wage claim context, the opt-out nature of a class action

> is a valuable feature lacking in an FLSA collective action, insofar as many employees will be reluctant to participate in the action due to fears of retaliation. Accordingly, the concern about including class members who do not really want to participate in the class deserves little weight in assessing whether a class action is superior to other available methods of adjudication.

*Id.* (internal citation and quotations omitted).

The undersigned finds resolution of the claims, at least as to the liability of the defendants to each individual class member, through a class action would, under the circumstances, be an efficient allocation of judicial resources. As stated above, resolution of the plaintiffs' claims do not require the individualized scrutiny described by the defendants because the core issue and arguments of each putative class member is the same. A class action is a superior method of resolution of the issues compared to individual litigation, separate litigation of the state law claims, or an FLSA action alone. Accordingly, the undersigned magistrate judge will recommend class certification under Rule 23(b)(3). Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

1.   The defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Filing No. 125 in case number 8:08CV90; Filing No. 227 in case number 8:08CV99) be denied.

2.   The plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 (Filing No. 112 in case number 8:08CV90; Filing No. 214 in case number 8:08CV99) be granted. The Class should be defined as:

> All current and former non-exempt, hourly production and support employees who have been employed at any time by Nebraska Beef, Ltd. and/or Nebraska Beef, Inc. at the Omaha, Nebraska processing facility during the time period March 4, 2004 to the present, and who use personal protective equipment.

**ADMONITION**

Pursuant to NECivR 72.2 any objection to these Findings and Recommendations shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of these Findings and Recommendations.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 4th day of January, 2010.

BY THE COURT:

s/ Thomas D. Thalken
United States District Judge

27